MARSHALL, &c.
*vs*
McDANIEL, &c.

rent than is due is no bar to his right to recover what is due—replevin is not the remedy for an excessive distress.

---

## Marshall, &c. *vs* McDaniel, &c.

ERROR TO THE HICKMAN CIRCUIT.

*Husband and wife. Settlements.*

JUDGE BRECK delivered the opinion of the Court.

THIS was a bill in chancery filed by Marshall, &c., setting up a large claim against Alfred McDaniel, alledging that he was a non-resident, and attaching as his property, several tracts of land and slaves. By an amended bill, Ann McDaniel, the wife of said Alfred, and John Hanna, as her trustee, were made defendants. On final hearing the Court below discharged the attachment, and dismissed the complainant's bill, and they have appealed to this Court.

It appears that in 1833 or 1834, David Johnson departed this life in the State of Mississippi, possessed of

CHANCERY.

*Case* 47.

*January* 12.

Case stated.

MARSHALL, &c.
vs
McDANIEL, &c.

considerable estate, and leaving his sister, Mrs. McDaniel, his only heir, who was with him, or in Mississippi, at the time of his death. He died intestate, and Walter Irvine, the step-father of Mrs. McDaniel, was appointed his administrator. At this time, McDaniel resided in the State of Tennessee, entirely destitute of means, and hopelessly insolvent. The administrator of Johnson, under these circumstances, resolved to resort to a Court of equity for the purpose of securing to Mrs. McDaniel the estate which had descended to her from her brother. But before this was done, she went to Tennessee, and her husband consented to unite with her in a power of attorney, authorizing John Hanna to collect and receive the estate, and hold and manage it as a trustee for the sole and separate use and benefit of herself and children. Hanna repaired to Mississippi, where, by an order of the Court of Probate, the estate was directed to be paid over to him in trust as aforesaid, and in that character, and for that purpose, he received it, amounting to about ten thousand dollars. The funds, or a portion thereof, were appropriated by him in the purchase of the attached lands and some of the slaves, the same having been conveyed to him, as the trustee for the sole use and benefit of Mrs. McDaniel and her children.

The validity and effect of the arrangement, by which this estate was thus vested in Hanna as trustee, present the main question for consideration.

In addition to the facts already stated, it appears that Mrs. McDaniel had been delicately raised, and in affluence, and that her patrimony had all gone in the general wreck of the estate of her husband. That she was the mother of seven children, and in rather feeble health. How many children she had in 1835–6, is not shown. The proof is, that she had seven a few years afterwards. When the arrangement was made, no portion of the estate of her brother had come to the possession of her husband.

In view of the facts thus appearing, it is manifest that a Court of equity in Kentucky would not have permitted the husband to obtain possession of the estate until suitable provision was made for the wife and children.

The wife has an equitable right to suitable settlement out of her estate for

This equity or right of the wife to an adequate settlement out of her estate for the support of herself and children, does not rest upon Legislative enactments, but upon the general and well settled principles of Courts of equity. The presumption, therefore, may be indulged, that the equity of Mrs. McDaniel to a settlement out of this estate, was recognized, and would have been enforced by the judicial tribunals in Mississippi.

But whether so or not, is immaterial. It is sufficient that it is unquestionable in Kentucky, and whether the settlement was made by the Chancellor or by the consent and act of the husband, is not deemed important. He never reduced any portion of the estate to possession, but consents and directs that it shall be vested in Hanna as trustee for the sole and separate use of Mrs. McDaniel and her children. In doing this, he did no more than the Chancellor would have done, unless the amount of the estate exceeded what would have been a reasonable and adequate provision. When it is considered that McDaniel was wholly destitute of means and contributed nothing, so far as appears, to the support of his wife and children, and when from the manner in which she had been raised, she was but illy qualified to struggle with poverty and want, we are not prepared to say that the whole estate exceeded a suitable and adequate provision for her and her children.

We are not inclined to go into a minute calculation with a view to ascertain the least possible sum, upon which a wife thus tenderly raised, and her children, could be sustained. Such has not been, and should not be, in our opinion, the practice of Courts of equity under such circumstances. But even in that view of the case, the result would be the same, the provision was not unreasonable or extravagant.

This fund having been thus vested in Hanna as trustee, let us enquire upon what ground the Chancellor is now asked to subject it, or the land and slaves which have been purchased with it, to the payment of McDaniel's debts.

It is contended that Mrs. McDaniel, by the will of her step-father, Irvine, has acquired a large estate, ade-

MARSHALL, &c.
*vs*
McDANIEL, &c.

herself and children. The Courts of Kentucky will therefore, presume that such a right would be recognized by the Courts of Mississippi.

Where the husband does that in the way of providing for his wife, by settlement out of her own property, which the Chancellor would do, it will be upheld by the Chancellor.

And in such case the Chancellor will not enter into a minute calculation to ascertain "the least possible sum upon which a wife tenderly raised, and her children, could be sustained."

A settlement made in behalf of a wife and chil-

MARSHALL, &c.
*vs*
McDANIEL, &c.

dren out of her own property, cannot be affected or reduced, from the fact that from the bounty of other relations, she may have been placed in such circumstances as not to stand in need of the provision made by the settlement.

quate to the support of herself and family, and so as to render unnecessary, the estate in the hands of Hanna, for that purpose. Irvine, it appears, died in 1839. He left to Mrs. McDaniel, as one of his residuary devisees, near thirty thousand dollars. The will, however, vested this devise in McDaniel as a trustee, for the sole and separate use of his wife. It is not contended that the complainants can reach this fund or the land or slaves in which it has been invested. The real question is whether the bounty of Irvine can impair or affect in any way, the previous settlement made for Mrs. McDaniel and her children, out of the estate derived from her brother. We think not. The effect of that settlement was to divest McDaniel of all interest in the estate, both legal and equitable.. It was not a mere temporary provision, subject to be revoked or set aside, should the fortunes of himself or his wife thereafter render it unnecessary. It secured to the wife and her children, so much of her estate, absolutely and unconditionally; no interest in remainder or reversion, or otherwise, was retained by the husband; and as he has no interest, there is none which the complainants can reach, unless they can show that the settlement was fraudulent, unjust or otherwise unauthorized and invalid, which they have entirely failed to do.

The decree dismissing the complainant's bill was, therefore, right, and is affirmed.

*J. & W. L. Harlan and Morehead & Reed* for plaintiffs; *Cates* for defendants.